Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Joan B. Gottschall | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 97 C 7501 | **DATE** | 3/15/2001 |
| **CASE TITLE** | Daron Hill, on behalf of himself and others similarly situated vs. Amoco Oil Company | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ■ Status hearing.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)   ☐ General Rule 21   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. Plaintiff's motion to respond to certain matters [71-1] is granted. Plaintiff's motion to substitute exhibits E-N to plaintiff's statement of additional material facts [76-1] is granted. Defendant's motion to strike Appendix D to plaintiff's motion for class certification [59-1] is denied. Defendant's motion to strike exhibits to plaintiff's statement of additional material facts [68-1] is denied. Defendant's motion for discovery sanctions [59-2] is granted to the extent of appropriate attorneys' fees, payable by plaintiff's counsel, as described in the accompanying Memorandum Opinion. Defendant is to file petition for fees on or before 03/30/01. In addition, Defendant will be granted leave to conduct additional discovery for 90 days, to begin following plaintiff's counsel's payment of the attorneys' fees sanction. Such discovery is to be limited in scope as described in the accompanying Memorandum Opinion. Defendant's motion for summary judgment [47-1] is denied without prejudice. Plaintiff's motion that paragraphs 60-74 of plaintiff's statement of additional material facts be deemed admitted [70-1] is denied as moot. Plaintiff's motion for class certification [52-1] is granted in part and denied in part. A status hearing is set for 3/29/01 at 9:30 A.M.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | number of notices | Document Number |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | |
| | No notices required. | | | 79 |
| | Notices mailed by judge's staff. | 60-7 FILED FOR DOCKETING 01 MAR 16 PM 3:11 | date docketed MAR 19 2001 | |
| | Notified counsel by telephone. | | | |
| X | Docketing to mail notices. | | docketing deputy initials | |
| | Mail AO 450 form. | | | |
| | Copy to judge/magistrate judge. | | date mailed notice | |
| | courtroom deputy's initials | Date/time received in central Clerk's Office | mailing deputy initials | |

# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

DARON HILL, on behalf of himself and others )
similarly situated, )
                              Plaintiff, ) No. 97 C 7501
      v. )
                               ) Judge Joan B. Gottschall
AMOCO OIL COMPANY, )
                          Defendant. )

## MEMORANDUM OPINION AND ORDER

**DOCKETED**
**MAR 1 9 2001**

### Background

Plaintiff Daron Hill brought a purported class action against defendant Amoco Oil Company, alleging violations of 42 U.S.C. §§ 1981, 1982, and 2000a. Hill alleges that Amoco has a policy and practice of requiring African-Americans, but not Caucasians, to prepay at gasoline pumps at Amoco owned and operated gas stations in the Chicago area. Hill seeks to certify a class under Federal Rule 23(b)(2) consisting of "all African-American persons who have purchased gas at or will in the future seek to purchase gas at Amoco-owned service stations in the Illinois counties of Cook, Lake, DuPage, McHenry, Will and Kane." (Pl.'s Mtn. for Class Cert. at 1). Hill also moves for certification of a subclass under Federal Rule 23(b)(3), seeking monetary damages and consisting of "all class members who were required to prepay." (Pl.'s Mtn. for Class Cert. at 1). Amoco opposed the motion for class certification and also moved for summary judgment on Hill's claims.

The pending motions for class certification and summary judgment hinge on whether certain evidence submitted by the plaintiff is properly considered in deciding the motions. Thus, a brief discussion of the course of discovery and the nature of the evidence produced is in order. Hill filed his original complaint in this action on October 24, 1997. In the course of discovery,

Amoco submitted to Hill a number of interrogatories and document requests. Among the discovery requests were the following:

> **Interrogatory No. 2:** Identify all instances, occasions, and/or occurrences of alleged discrimination that Hill has reason to believe that others have experienced in connection with the prepayment of gasoline at any Amoco gasoline stations.
>
> **Interrogatory No. 7:** Identify any communications related to this litigation that you have had with other potential class members.
>
> **Document Request No. 2:** Any and all documents relating to whether any person of which you are aware suffered purported discrimination regarding the prepayment of gasoline at any Amoco gasoline station.
>
> **Document Request No. 4:** Any and all affidavits, witness statements and/or interview notes regarding facts or evidence in support of your claims.
>
> **Document Request No. 14:** Any and all documents relating or referring to the identity of members of the purported class or subclass.

(Def.'s Mtn. to Strike, Exhs. 2, 3). Hill responded on October 26, 1999. In response to the interrogatories, Hill did not identify any other individuals who were allegedly subject to Amoco's discriminatory prepayment practices. In response to the document requests, Hill stated that no such documents were known to him and that he did not have such documents in his possession. Hill never supplemented these responses.

On July 24, 2000, Amoco moved for summary judgment, relying chiefly on Hill's lack of evidence of a pattern or practice of discrimination. Amoco noted that Hill produced no evidence of any alleged acts of discrimination other than his own personal account of two events that he experienced. The next day, Hill moved for class certification. In connection with that motion, Hill attached several documents as Appendix D to the motion. Included in Appendix D are 1)

2

handwritten lists of several names, addresses, and phone numbers; 2) three signed witness statements describing alleged incidents of discrimination by Amoco; and 3) an internal document from the office of Hill's attorneys describing a phone call from another person who claimed to have been subjected to discrimination at an Amoco station. (Pl.'s Mtn. for Class Cert., App. D). Amoco subsequently moved to strike Appendix D, arguing that the materials should have been produced in discovery and that, in any event, the materials are inadmissible. In response, Hill's attorneys did not deny that they had the Appendix D materials prior to their discovery responses. In fact, they admitted that the materials in Appendix D should have been produced. (Pl.'s Resp. to Mtn. to Strike at 2). Despite a number of excuses, including internal staff changes, Hill's attorneys essentially asked the court to excuse their "oversight." (Pl.'s Resp. at 2). Hill then submitted to the court a videotape, labeled "Hill v. Amoco Oil Company, 97 C 7501, Judge Gottschall." The videotape appears to be a composite tape, including portions of other tape recordings of alleged incidents of prepayment discrimination at Amoco stations.

On the same day that Amoco moved to strike the materials constituting Appendix D, Hill responded to Amoco's motion for summary judgment. In his response, Hill relied on, among other things, the videotape and ten affidavits of potential witnesses and class members. The affidavits were signed, and purported to be sworn, but were not notarized nor made under penalty of perjury. (Pl.'s Resp. to Summ. J., Exhs. E-N).[1] Amoco moved to strike the videotape and the affidavits. Hill then submitted a motion to substitute new Exhibits E-N: ten signed affidavits that were identical to the earlier affidavits, except that they were now made under penalty of

---

[1] These ten witnesses do not include the three who submitted the handwritten witness statements found in Appendix D to Hill's motion for class certification. Nine of the ten were identified in the handwritten lists of names found in Appendix D, but one (Sylvia Clay) was not identified until Hill filed his response to Amoco's motion for summary judgment.

3

perjury. Hill also submitted a motion that paragraphs 60-74 of his statement of additional material facts (submitted in connection with the motion for summary judgment) be deemed admitted by Amoco for Amoco's failure to provide citations to the record in its response to Hill's additional facts.

## Analysis

Before discussing the pending motions for class certification and summary judgment, the court will first address the preliminary evidentiary matters.

### I. Defendant's Motions to Strike and for Discovery Sanctions

Amoco's motion to strike and for discovery sanctions is directed at the materials in Appendix D to the plaintiff's motion for class certification. Amoco's second motion to strike is directed at the videotape and Exhibits E-N (the ten affidavits) attached to plaintiff's statement of additional facts. In these motions, Amoco essentially makes the following five arguments: 1) that the materials in Appendix D should be stricken because they were not produced before discovery was closed, even though they were in Hill's possession at that time; 2) that the materials in Appendix D are inadmissible hearsay, and lack foundation and authentication, 3) that the names and addresses of the witnesses who submitted the affidavits found in Exhibits E-N were not disclosed to Amoco prior to the close of discovery, denying Amoco the opportunity to depose the witnesses; 4) that the affidavits are unsworn and not made under penalty of perjury; 5) that the videotape is inadmissible because it cannot be authenticated, it is not an original or an accurate duplicate under the best evidence rule, and because it is hearsay not within an exception.

With respect to the discovery violations (Amoco's first and third arguments), the court certainly understands Amoco's frustration with plaintiff's counsel. In response to specific

4

discovery requests, Hill's counsel identified no other potential class members, despite having compiled the lists in Appendix D. After Amoco's counsel again requested the information during depositions, Hill's counsel still failed to produce the names. Then, after discovery had closed and Amoco's counsel had drafted and submitted a motion for summary judgment, the names were finally produced. Now Hill's counsel simply claims that the names were "out of sight, . . . out of mind." (Pl.'s Resp. to Mtn. to Strike at 2). Counsel's failure to produce the information has prejudiced Amoco, at least insofar as Amoco's counsel expended time and effort (and Amoco's money) in briefing motions that would have been unnecessary had Hill's counsel produced the documents. Nonetheless, the court does not find that the drastic remedy of striking Appendix D and Exhibits E-N is necessary. Such a sanction would effectively end Hill's chances of success on class certification and on the merits of his claim. In the apparent absence of subjective bad faith,[2] and particularly given the seriousness of the allegations in this case and the public importance of an appropriate resolution, the court is reluctant to order a sanction having that effect. Rather, a more appropriate remedy would be to award Amoco attorneys' fees and expenses, as requested by Amoco in the motions to strike. *See* Fed. R. Civ. P. 26, 37(c). Thus, the court will award Amoco the actual attorneys' fees and expenses incurred in bringing the two motions to strike. The fees and expenses are to be paid by plaintiff's counsel. Amoco's fee petition must be filed on or before March 30, 2001. In addition, the court will grant Amoco leave to conduct additional discovery for 90 days, limited in scope to discovery concerning the materials contained in Appendix D, Exhibits E-N, and the videotape. This additional discovery

---

[2] There is nothing in the record to suggest that Hill's attorneys were actively hiding the Appendix D documents from Amoco, rather than simply acting negligently by failing to produce the documents despite repeated, specific requests for them.

5

period will begin immediately following payment by plaintiff's counsel of the attorneys' fees and expenses sanction.

Amoco's second argument is that the Appendix D materials are inadmissible. Given that Hill has now produced signed statements by ten individuals describing incidents of alleged discrimination, the additional probative value of the handwritten lists and the handwritten, signed statements (not made under penalty of perjury) found in Appendix D is limited. The court declines to rule on the admissibility of the Appendix D materials, and will not consider them in deciding the remaining motions.

Amoco's fourth argument attacks the validity of the affidavits in Exhibits E-N. Hill originally submitted signed affidavits that purported to be sworn statements, but were not notarized. Following Amoco's motion to strike, Hill submitted new affidavits. Each of these new affidavits begins, "I, [name], under penalty of perjury, state that the following facts contained in this affidavit are true and correct, are within my personal knowledge and if called upon to testify in Court to the following, I would do so." (Mtn. to Subst. Exhs. E-N). The new affidavits clearly subject the affiants to the penalty of perjury and comport with the requirements of 28 U.S.C. § 1746. Thus, even though the new affidavits were not sworn before a public official, they may be considered in deciding the motions for class certification and summary judgment. *See Eddings v. LeFevour*, No. 98 C 7968, 2000 WL 1466610, at *7 (N.D. Ill. Sep. 29, 2000) (citing *DeBruyne v. Equitable Life Assur. Soc'y*, 920 F.2d 457, 471 (7th Cir. 1990)). Hill's motion to substitute Exhibits E-N is granted and, therefore, Amoco's fourth argument fails.

Finally, Amoco's fifth argument addresses the admissibility of the videotape. The court anticipates that Hill may, at trial, have trouble authenticating the composite recording. At this

stage in the proceedings, however, the court declines to address the authenticity and admissibility of the videotape. As will become apparent, the determination of whether or not the composite videotape is admissible will have no bearing on the court's resolution of the pending motions for class certification and summary judgment. The court, therefore, will not consider the tape in deciding those motions.

## II. Defendant's Motion for Summary Judgment

Having addressed the evidentiary disputes, the court now turns to Amoco's motion for summary judgment.[3] Amoco's motion for summary judgment was filed before it had access to the materials in Appendix D to Hill's motion for class certification, Exhibits E-N of Hill's statement of additional facts, and the videotape. As a result, most of Amoco's arguments in favor of summary judgment revolve around the inability of Hill to produce evidence of multiple acts of discrimination, as necessary to show a "pattern or practice" of discrimination at Amoco stations. The court has determined that Amoco should be given the opportunity to depose the witnesses identified in Appendix D and Exhibits E-N and to develop the record with respect to the alleged incidents of discrimination described by the witnesses and depicted in the composite videotape. Therefore, Amoco's pending motion for summary judgment is denied without prejudice. At the close of the additional discovery Amoco may submit a new motion for summary judgment.[4]

---

[3] In some cases, it is appropriate to consider a motion for summary judgment prior to resolving a motion for class certification. *See Cowen v. Bank United of Texas, FSB*, 70 F.3d 937, 941 (7th Cir. 1995). Here, the court finds that it is in the interest of judicial economy to resolve the motion for summary judgment before facing the question of class certification. Because the motion for summary judgment is denied without prejudice, it makes little difference whether a class is certified before or after the summary judgment motion is resolved.

[4] Because the court has authorized additional discovery and denied Amoco's motion for summary judgment without prejudice, Hill's motion that paragraphs 60-74 of his statement of

7

## III. Plaintiff's Motion for Class Certification

Hill has moved the court to certify a class of "all African-American persons who have purchased gas at or will in the future seek to purchase gas at Amoco-owned service stations in the Illinois counties of Cook, Lake, DuPage, McHenry, Will and Kane." (Pl.'s Mtn. for Class Cert. at 1). This class would be certified under Rule 23(b)(2) for the purpose of obtaining injunctive relief. Hill also seeks to certify a subclass consisting of "all class members who were required to prepay." This subclass would be certified under Rule 23(b)(3) for the purpose of seeking monetary damages for Amoco's allegedly discriminatory practices. *See* Fed. R. Civ. P. 23(c)(4); *Lemon v. International Union of Operat. Eng'rs, Local No. 139*, 216 F.3d 577, 581-82 (7th Cir. 2000) (approving of divided class certification where plaintiffs seek both injunctive and non-incidental monetary damages).

The prerequisites for certification of a class action are set forth in Federal Rule 23. A class may be certified only if "(1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a).

Once the prerequisites are met, a party may maintain a class action for injunctive relief under Rule 23(b)(2) so long as "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or

---

additional facts be deemed admitted is rendered moot. Hill's motion is therefore denied, and the parties are instructed to submit new Local Rule 56.1 statements in the event that Amoco files a new motion for summary judgment.

8

corresponding declaratory relief with respect to the class as a whole." Fed. R. Civ. P. 23(b)(2). In order to maintain a Rule 23(b)(3) class action for damages, however, the court must find that "questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3).

### A. Rule 23(a) Prerequisites

*Numerosity*

The numerosity requirement is easily met for both the 12(b)(2) class and the 12(b)(3) subclass. In making the numerosity determination, the court need not determine the exact number of class members. Rather, where it is general knowledge or common sense that the proposed class would be large, the court may assume that joinder would be impracticable. *See Rivera v. Grossinger Autoplex, Inc.*, No. 00 C 442, 2000 WL 1280904, at *3 (N.D. Ill. Sep. 1, 2000). It is general knowledge that a very large number of African-Americans have purchased, or will purchase, gasoline at the Amoco stations in the Chicago area. It is also generally known that a large number of them (along with a large number of Amoco customers of any race) have prepaid for gasoline. Prepayment requirements for certain pumps at certain times is a common practice in the Chicago area. Thus, the court finds that it is general or common knowledge that many African-Americans have prepaid for gasoline at Amoco stations in the Chicago area. In any event, Hill has produced the affidavits of ten African-Americans who are prepared to testify that they were required to prepay at Amoco stations. Presumably, there are many more who have similarly prepaid - whether the result of discrimination or not. Hence, the numerosity requirement is satisfied.[5]

---

[5] Amoco objects to this conclusion, arguing that Hill has not shown that there are a large number of African-Americans who were actually discriminated against by being forced to prepay when Caucasians were not. Amoco essentially complains that the class definitions are too broad,

9

*Commonality*

The requirement of commonality is met where there is a question of law or fact common to the resolution of the class members' claims. *See Rivera*, 2000 WL 1280904, at *3. Where the party opposing the class has engaged in some standardized conduct directed at the class members, this requirement is usually met. *See Keele v. Wexler*, 149 F.3d 589, 594 (7th Cir. 1998). In suits alleging a pattern or practice of unlawful racial discrimination, this requirement is often satisfied, because the question of whether the defendant engaged in a pattern or uniform practice of discrimination will be common to all of the class members. *See generally General Telephone Co. v. Falcon*, 457 U.S. 147, 157 (1982). The mere fact that the complaint alleges racial discrimination, however, does not ensure class certification. *See id.* The court concludes that both the proposed 12(b)(2) class and the proposed 12(b)(3) subclass satisfy the commonality requirement. For the claims of each class, the court will need to address the question of whether there is a pattern or practice at Amoco-owned stations of requiring African-Americans, but not Caucasians, to prepay for gasoline. Thus, there is at least one common question, and the commonality requirement is met. Amoco's argument that the broad class definitions destroy commonality is unavailing. Both classes will include African-Americans who were not actually discriminated against (because, for instance, a class member prepaid at a time when *every* customer was, in fact, required to prepay). This means only that there are some individual questions respecting liability. While that is certainly relevant for the predominance inquiry, discussed below, it does not destroy the commonality required under 23(a). In order to meet the 23(a) commonality prerequisite, a plaintiff must show only that there is one or more common question of law or fact. *See Sledge v. Sands*, 182 F.R.D. 255, 258 (N.D. Ill. 1998).

---

and that the broad definitions may ensure numerosity, but at the same time destroy commonality and typicality. These arguments are really addressing the commonality and typicality requirements, and will be discussed in connection with those requirements.

10

*Typicality*

The typicality requirement is met if the named plaintiff's claim "arises from the same event or practice or course of conduct that gives rise to the claims of other class members and his or her claims are based on the same legal theory." *Keele*, 149 F.3d at 595 (internal quotation marks and citation omitted). Amoco argues that Hill's proposed classes do not satisfy the typicality requirement because the class definitions are so broad that they include African-Americans who were not, in fact, discriminated against. Specifically, Amoco argues that Hill has not come forward with "significant proof," in the form of affidavits or other evidence, to establish that Hill's claim is typical of those of the class members. (Def.'s Resp. to Mtn. for Class Cert. at 8) (relying on *General Telephone*, 457 U.S. at 147 and cases interpreting it). Amoco's interpretation of Hill's burden of proof, however, would require the court to delve too deeply into the merits of each individual class member's claim before a certification decision could be made.[6] It is enough that Hill has presented some evidence tending to show that some of the other potential class members were discriminated against in a nearly identical fashion. The new Exhibits E-N, although filed in connection with the motion for summary judgment, are sufficient to meet this requirement. Judging by the record currently before the court, it appears as though Hill's claim is typical of the claims of the other potential class members.

*Adequate Representation*

The final prerequisite under Rule 23(a) is that the representative will fairly and adequately

---

[6] The circumstances of this case are markedly different from those in *General Telephone*. In *General Telephone*, the plaintiff was denied a promotion and sought to represent a class of individuals who were either denied a promotion *or never hired* by the same employer. There, the discrimination the named plaintiff complained of was not typical of the claims of the entire class he sought to represent. *See General Telephone*, 457 U.S. at 159 n.15. Here, the nature of the discrimination alleged as to the class members is nearly identical to the discrimination allegedly suffered by Hill. The only individual differences will be with respect to whether or not such discrimination actually happened. *See generally Meiresonne v. Marriott Corp.*, 124 F.R.D. 619, 623 (N.D. Ill. 1989) (drawing a similar distinction).

11

represent the interests of the class. This requirement is comprised of two separate inquiries: 1) Is the plaintiff's attorney qualified, experienced, and able to conduct the proposed litigation?, 2) Does the plaintiff have interests antagonistic to those of the purported class members? *See generally Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 626 n.20 (1997). Amoco makes two arguments with respect to the adequacy requirement, both dealing with only the first of the two inquiries. First, Amoco argues that Hill did not move for class certification until nearly three years after the original complaint was filed, demonstrating that he is an inadequate representative. (Def.'s Resp. to Mtn. for Class Cert. at 11) (citing *Nagel v. ADM Investor Servs.*, 217 F.3d 436, 443 (7th Cir. 2000), *Harriston v. Chicago Tribune Co.*, 992 F.2d 697, 704 (7th Cir. 1993), and *Williams v. Joliet Correctional Ctr.*, No. 92 C 4699, 1993 WL 427737, at *2 (N.D. Ill. Oct. 20, 1993)). The court refuses to deny class certification because of this delay under the circumstances of this case. Defendant Amoco requested, and was granted, a stay of discovery that lasted for nearly 18 months while the parties litigated a dispositive motion to dismiss. Moreover, Amoco points to no prejudice to the class members caused by Hill's delay in moving for certification.

Second, Amoco argues that Hill failed to adequately investigate the potential claims of the purported class members. The evidence in the record, however, undermines Amoco's contention. Exhibits E-N demonstrate that Hill has found other potential class members and obtained descriptions of other alleged incidents of discrimination.[7] Given the discovery oversights of Hill's counsel, however, the court is somewhat concerned with the adequacy of Hill's representation of the interests of the other class members. At this stage of the litigation,

---

[7] In fairness to Amoco, it made this adequacy argument before Exhibits E-N were filed in response to Amoco's motion for summary judgment. With his motion for class certification, Hill attached only the Appendix D materials. Nonetheless, the record at this point indicates that Hill has performed an adequate investigation into the claims of some other potential class members.

the court is satisfied that Hill is an adequate representative. But Plaintiff's counsel is reminded of the court's continuing duty to evaluate the adequacy of the class representation by the named plaintiff and his counsel. *See* In re *General Motors Corp. Engine Interchange Litigation*, 594 F.2d 1106, 1124 (7th Cir. 1979). Should the court later determine that plaintiff's counsel is inadequately representing the class members' interests, the class will be de-certified.

### B. Rule 23(b)(2) Class

Having met the prerequisites, the Rule 23(b)(2) class will be certified if Amoco has acted on grounds generally applicable to the class, making injunctive relief appropriate. That requirement is easily met in this case. Hill alleges that Amoco engages in a pattern or practice of discriminating against African-Americans, and seeks an injunction to prevent such discrimination. This is a textbook example of an action appropriate for classwide resolution under Federal Rule 23(b)(2). Thus, the court hereby certifies Hill's 23(b)(2) class.[8]

### C. Rule 23(b)(3) Subclass

The requirements for maintaining a class action for damages under Rule 23(b)(3) are more strenuous. In addition to the Rule 23(a) prerequisites, a plaintiff seeking to certify a class action for damages under Rule 23(b)(3) must show that common questions will predominate and that a class action is superior to other methods of adjudication. Fed. R. Civ. P. 23(b)(3). Thus, the court will certify Hill's purported subclass only if these additional requirements are met.

*Predominance and Superiority*

Amoco points to a number of individual questions that will need to be resolved in order

---

[8] The court notes that the proposed class definition is not limited by reference to a time period. For a 23(b)(2) class, seeking prospective relief, such a limitation is generally unnecessary. *See Anderson v. Cornejo*, Nos. 97 C 7556, 99 C 3786, 2000 WL 286902, at *10 (N.D. Ill. Mar. 10, 2000) (citing *McCarthy v. Madigan*, 503 U.S. 140, 153 n.5 (1992)).

13

for individual class members to establish Amoco's liability under Title VII. At the very least, members of the Rule 23(b)(3) class will be required to show: 1) that they did not prepay out of a personal preference for prepaying, 2) that the station attendant was at least aware of his/her race, and 3) that similarly-situated Caucasians were not required to prepay. These, and potentially other individual inquiries, would be especially fact intensive. For example, each purported class member would have to show that at least one Caucasian used the same pump, or another prepay-only pump, at the same station and at approximately the same time and was not required to prepay. Thus, the court will be forced to address several specific questions of fact regarding each individual incident of alleged discrimination.

Hill recognizes that some individual fact questions will need to be resolved if the Rule 23(b)(3) subclass is certified. Nonetheless, Hill argues that the common question of whether Amoco maintained a pattern or practice of discrimination would predominate over the individual questions. The court disagrees. Hill relies on *Wilson v. Tinicum Township*, No. Civ. A. 92-6617, 1993 WL 280205 (E.D. Pa. Jul. 20, 1993) for the proposition that where a plaintiff is alleging that the defendant is engaged in a presumptively invalid procedure, a common question necessarily predominates. (Pl.'s Reply at 9). In *Wilson*, the plaintiff sought to certify a Rule 23(b)(3) class of individuals who had been stopped by police in a certain township as a result of a custom or policy of stopping travelers on a certain interstate for pretextual traffic violations in order to gain consent to search, or in order to improperly search, the stopped vehicles.

*Wilson* is readily distinguishable. In *Wilson*, the only individual question identified by the defendants in opposition to class certification was the question of damages. The *Wilson* court, in rejecting the defendants' argument, noted that it "is settled law that individual proof of damages does not preclude certification of a class under Rule 23(b)(3) where common issues of liability

14

predominate." *Wilson*, 1993 WL 280205, at *8. Common questions predominated because the fact of being stopped as a result of the policy of pretextual stops was the only fact that plaintiffs relied upon for the liability inquiry. As the court put it, "the liability which the plaintiffs seek to establish is based on the operation itself rather than on the circumstances surrounding each individual stop or arrest." *Id.* In contrast, the individual questions that must be resolved with respect to each prepay incident in this case will determine not only the extent of damages, but also liability itself. If an African-American was required to prepay at an Amoco owned and operated station, she will be a member of the damages subclass. But if all other customers, including Caucasians, were also required to prepay at that pump or station, then that class member has not demonstrated that Amoco discriminated against her. Thus, she has not shown liability in her individual case. *See Rutstein v. Avis Rent-A-Car Systems, Inc.*, 211 F.3d 1228, 1235 (11th Cir. 2000); *see also Anderson v. Cornejo*, No. 97 C 7556, 2000 WL 1769636, at *1 (N.D. Ill. Oct. 12, 2000) (distinguishing *Wilson* on similar grounds). Where, as here, individual questions bearing on liability predominate over common questions, certification of a Rule 23(b)(3) class is inappropriate. *See id.* at 1235-36 ("[S]erious drawbacks to the maintenance of a class action are presented where initial determinations, such as the issue of liability *vel non*, turn upon highly individualized facts.") (quoting *McCarthy v. Kleindienst*, 741 F.2d 1406, 1415 (D.C. Cir. 1984)) (alteration in original).

More analogous to the present case is *Rutstein*, decided by the Eleventh Circuit. In *Rutstein*, the plaintiff alleged that defendant Avis had a policy of denying corporate accounts to businesses owned or operated by Jewish people or people with Jewish accents or names. Plaintiff sought to certify a Rule 23(b)(3) class alleging discrimination in violation of 42 U.S.C. § 1981. The court found that the resolution of individual questions would predominate over the

common question of whether Avis engaged in a pattern or practice of discrimination. The court stated: "Whether Avis maintains a policy or practice of discrimination may be relevant in a given case, but it certainly cannot establish that the company intentionally discriminated against every member of the putative class." *Rutstein*, 211 F.3d at 1235. Individual questions, similar to the ones in the present case, predominated in *Rutstein* – whether the individual plaintiff met the financial criteria for a corporate account; whether the plaintiff would be using the vehicles in a manner that justified the cost to Avis; and so on. *See id*; *see also Jackson v. Motel 6 Multipurpose, Inc.*, 130 F.3d 999, 1006 (11th Cir. 1997).

Hill has not shown that common questions of law or fact will predominate over the individual questions that must be addressed in order to establish liability in individual cases. Certification of the subclass under Rule 23(b)(3) is therefore inappropriate. Maintenance of a class action for damages in this case would be untenable because multiple individual questions, respecting not only damages but also liability, would need to be resolved in each of hundreds or thousands of individual cases. Hill's motion for class certification is denied as to the Rule 23(b)(3) subclass.

## Conclusion

For the foregoing reasons: 1) Plaintiff's motion to respond to certain matters is granted; 2) Plaintiff's motion to substitute exhibits E-N to plaintiff's statement of additional material facts is granted; 3) Defendant's motion to strike Appendix D to plaintiff's motion for class certification is denied; 4) Defendant's motion to strike exhibits to plaintiff's statement of additional material facts is denied; 5) Defendant's motion for discovery sanctions is granted only to the extent of appropriate attorneys' fees, expenses, and additional discovery, described above; 6) Defendant's motion for summary judgment is denied without prejudice; 7) Plaintiff's motion

16

that paragraphs 60-74 of plaintiff's statement of additional material facts be deemed admitted is denied as moot; 8) Plaintiff's motion for class certification is granted as to the Rule 23(b)(2) class, but denied as to the Rule 23(b)(3) subclass.

ENTER:

JOAN B. GOTTSCHALL
United States District Judge

DATED: March 15, 2001