# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Joan B. Gottschall | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 97 C 7501 | **DATE** | 1/27/2003 |
| **CASE TITLE** | Daron Hill vs. Amoco Oil Company | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m)   ☐ Local Rule 41.1   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. Defendant's motion for summary judgment on the injunctive relief claims [102-1] is granted; defendant's motion to decertify the class [102-2] is denied as moot. Plaintiff's cross-motion for summary judgment on the injunctive relief claims [117-1] is denied. Defendant's motion for summary judgment on plaintiff's individual claim for damages is denied. Plaintiff's cross-motion for summary judgment on plaintiff's individual claim for damages [118-1] is also denied.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | Document Number |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | | |
| | Notified counsel by telephone. | | JAN 2 9 2003 date docketed | |
| X | Docketing to mail notices. | | | 136 |
| X | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| md | courtroom deputy's initials | | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

DARON HILL, on behalf of himself and others )
similarly situated, )
                                   Plaintiff, )    Case No. 97 C 7501
    v. )
                                              )    Judge Joan B. Gottschall
AMOCO OIL COMPANY, )
                                 Defendant. )

## MEMORANDUM OPINION AND ORDER

Plaintiff Daron Hill filed a class action against defendant Amoco Oil Company ("Amoco") alleging violations of 42 U.S.C. §§ 1981, 1982 and 2000a. Hill specifically alleges that Amoco has a racially discriminatory policy and/or practice of requiring African-American customers, but not white customers, to prepay for gasoline at Amoco owned-and-operated gas stations in the Chicagoland area. On March 15, 2001, the court granted Hill's motion to certify a class under Rule 23(b)(2) of the Federal Rules of Civil Procedure consisting of "all African-American persons who have purchased gas or will in the future seek to purchase gas at Amoco-owned service stations in the Illinois counties of Cook, Lake, DuPage, McHenry, Will and Kane."[1] (Mem. Op. & Order of 3/19/01 at 1.) Hill, on behalf of the class, seeks injunctive relief to stop Amoco's allegedly discriminatory practice. Hill also has an individual claim pending for his damages. Amoco moved for summary judgment on the injunctive relief claims, and alternatively, to decertify the class. Amoco also moved for summary judgment on Hill's individual claim for damages. Hill filed cross-motions for summary judgment on both the class claim for injunctive relief as well as his individual claim for damages. For the reasons set forth

---

[1] Hill also wanted to seek monetary damages on behalf of all class members who were required to prepay, but the court denied Hill's motion to certify a subclass under Fed. R. Civ. P. 23(b)(3).

136

below, Amoco's motion for summary judgment on the injunctive relief claims is granted, its motion to decertify the class is denied as moot and its motion for summary judgment on Hill's individual claim for damages is denied. Both of Hill's cross-motions for summary judgment are denied.

I.   **Background on Gasoline Prepayment Requirements**

It is a common practice for gas stations to require customers to pay for gas before fueling their cars, *i.e.*, to prepay. Prepayment requirements generally are designed to prevent theft of gasoline, or "drive-offs." Prepayment requirements may vary from station to station. Depending on the risk of loss at a given gas station, the station could have a twenty-four hour postpay policy, a twenty-four hour prepay policy, or different prepayment requirements depending on the time of day (*e.g.*, prepay after 6:00 p.m.). Additionally, there may be different prepayment requirements for different pumps at the same station (*e.g.*, allowing customers at pumps closest to the station attendant to pay after filling their tanks, while requiring customers at pumps farther away to prepay). Further, regardless of whether there is a prepayment requirement for a particular pump, at Amoco stations gasoline will not be released unless the pump is activated by an Amoco customer service representative ("CSR") or the customer inserts a valid credit card into the credit card machine at the pump. "There must be some indication from the customer at a pump before a CSR will activate the pump. If a customer does not push the appropriate button on the pump, the CSR may not know to activate the pump." (Def.'s L.R. 56.1(a)(3) Statement Undisputed Facts Supp. Mot. Summ. J. Inj. Relief Claims at ¶¶ 26-27.)

Prepayment policies are not inherently discriminatory. Liability for discrimination may arise, however, if the policies are enforced in a discriminatory manner.

2

## II. Standard of Review

Summary judgment is proper only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In determining whether the movant is entitled to summary judgment, the court examines the admissible evidence in the light most favorable to the nonmoving party, drawing any reasonable inferences in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). But to avoid summary judgment, the party bearing the burden of proof on an issue must affirmatively show the existence of a genuine issue of material fact that requires trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The substantive law of the case governs which facts are material: "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248. "[U]nless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party," there is no issue for trial. *Id.* In cases in which the parties file cross-motions for summary judgment, and thus evidently agree that there is no genuine issue of material fact requiring trial, the court must still consider each motion, and can deny both motions if neither party establishes its right to judgment as a matter of law. *ITT v. Indus. Credit Co. v. D.S. America, Inc.*, 674 F. Supp. 1330, 1331 (N.D. Ill. 1987); 10A Charles Alan Wright et al., *Fed. Practice and Procedure* § 2720 (3d ed. 1998).

## III. Motions for Summary Judgment on the Injunctive Relief Claims

This class action is a disparate treatment case, alleging that Amoco treated African-American customers differently from white customers because of their race. Specifically, the

3

class claims that Amoco made African-American customers prepay for gasoline while allowing white customers to pay after pumping gasoline. Hill, on behalf of the class, seeks an injunction against all Amoco owned-and-operated stations in Cook, Lake, DuPage, McHenry, Will and Kane counties ("the Chicagoland counties"). To prevail on their claims for injunctive relief, plaintiffs must show that (1) they are members of a racial minority, (2) defendant intentionally discriminated against them because of their race, and (3) the discriminatory conduct related to one or more of the protected rights enumerated in §§ 1981, 1982 or 2000a: *e.g.*, the right to make and enforce contracts, purchase property, and/or enjoy the goods and services of any public accommodation. *See, e.g., Morris v. Office Max, Inc.*, 89 F.3d 411, 413 (7th Cir. 1996). Because this is a class action, plaintiffs must show that Amoco had a policy, pattern or practice of discrimination. *Munoz v. Orr*, 200 F.3d 291, 299 (5th Cir. 2000). Amoco moved for summary judgment on the grounds that the evidence does not, as a matter of law, support the existence of such a policy, pattern, or practice. Hill filed a cross-motion for summary judgment, contending that the evidence establishes a pattern and practice of discrimination as a matter of law.

There is no genuine issue of fact as to whether Amoco has a formal policy that condones discrimination: from the evidence it is clear that Amoco has formal, affirmative, anti-discrimination policies in place.[2] For example, Amoco has a formal anti-discrimination policy stating that Amoco employees must not discriminate on the basis of race, national origin, or any other protected status. Amoco's formal policy also states that any Amoco employee who discriminates against a customer, co-worker or the like will be subject to discipline, including discharge. Further, Amoco's formal policy prohibits its employees from enforcing prepayment

---

[2]All facts set forth in this opinion are undisputed unless otherwise noted.

4

requirements in a discriminatory manner. Under Amoco's formal policy, corporate approval is required before any given station can alter its prepayment requirements. And neither employees nor station managers have discretion to determine whether to follow the prepayment requirements of their particular station.

Given the lack of an express discriminatory policy at Amoco, Hill bears the burden of establishing that Amoco engaged in a pattern and practice of discrimination. Hill and the class will survive Amoco's motion for summary judgment only if the court finds that a "rational jury could, on the evidence presented in the summary judgment proceeding, bring in a verdict" for plaintiffs on the issue of whether the Amoco owned-and-operated stores in the Chicagoland counties engaged in a pattern and practice of racial discrimination. *Mills v. First Fed. Sav. & Loan Ass'n*, 83 F.3d 833, 846 (7th Cir. 1996) (internal quotation marks omitted). The court therefore will examine the admissible evidence in the record and the legal standard for establishing a pattern and practice of discrimination.[3]

A. Facts in the Record Regarding Pattern and Practice

At the end of 1995, Amoco owned and operated 33 stores in the Chicagoland counties. By the end of 2001, the number of Amoco owned-and-operated stores in those counties had risen to 71. Class members have identified at most ten of those stores as stations which may have

---

[3]Hill does not argue that a genuine issue of material fact exists which precludes summary judgment. Rather, Hill contends that the evidence establishes, as a matter of law, that Amoco did engage in a pattern or practice of discrimination, and that the class therefore is entitled to summary judgment. The court nevertheless must consider the issue. 10A Charles Alan Wright et al., *Fed. Practice and Procedure* § 2720 (3d ed. 1998).

5

discriminated against the class by requiring prepayment based on their race.[4] With respect to those ten stations, class members identified between twenty-five and thirty incidents of alleged discrimination over a seven-year period. Regarding six of those incidents, class members complained to the CSR involved in the incident; for two of those six incidents, class members also complained to the managers of the stations where the incidents took place.[5]

Several of the class members who were able to make specific allegations regarding incidents of discrimination were regular customers at Amoco. Hill, for example, testified that he purchased gas at Amoco for years. He identified one incident of purported discrimination that occurred during his time as a regular customer.[6] Similarly, Valencia Jones-Moore was also a regular Amoco customer. She testified regarding a few specific incidents of alleged disparate treatment. Her husband, Charles Moore, identified one incident of alleged discrimination at the Amoco station at 2620 W. 95th Street in Evergreen Park; he testified that he purchased gas at

---

[4]The addresses of those ten stations are: 1) 7059 S. Ashland, Chicago; 2) 5130 S. Lake Park, Chicago; 3) 1841 W. Devon, Chicago; 4) 2620 W. 95th Street, Evergreen Park; 5) 18257 S. Halsted, Glenwood, 6) 21102 Governors Highway, Matteson; 7) 550 W. North, Lombard; 8) 8800-8820 W. Grand Ave., River Grove; 9) 1303 Naperville/Plainfield Rd., Naperville; and 10) 901 N. Washington, Naperville.

[5]Amoco may dispute this fact; for purposes of this motion, the court accepts Hill's version.

[6]Hill disputes this number, arguing that he testified that he may have been the victim of discrimination at Amoco as many as twenty times. But Hill offered no evidence to support that assertion. Rather, at his deposition he identified only two specific instances of alleged discrimination against him at an Amoco owned-and-operated station: once at the Amoco at 8800-8820 W. Grand Ave. in River Grove and once at the Amoco at 545-550 W. North Ave. in Lombard ("Lombard Amoco"). More importantly, Hill now claims that he was discriminated against only once, at the Lombard Amoco. (Pl.'s Resp. to Def.'s L.R. 56.1(a)(3) Statement of Undisputed Facts Supp. Def.'s Mot. Summ. J. Indiv. Damages Claim, ¶¶ 27-28.)

6

that particular station ten to twelve times per month over a course of four years.⁷ Angela Harris bought gasoline at the station at 71st and Ashland in Chicago for years; she identified one incident of alleged discrimination at that location. Vincent Barner, a regular customer at the Amoco at 51st and Lake Park in Chicago, raised one allegation of discrimination at that location. In fact, the parties agree that Barner routinely purchased gasoline at Amoco without being subjected to discrimination.

Hill has never attempted to visit Amoco owned-and-operated stations to observe and compare transactions involving white customers to those involving African-American customers in order to analyze whether Amoco routinely applied its prepayment requirements in a racially-discriminatory manner. However, in addition to anecdotal evidence from class members regarding incidents of discrimination, Hill, on behalf of the class, submitted three videotapes purporting to show three instances in which Amoco required African-American customers to

---

⁷Hill argues that Moore was discriminated against at least 150 times. Because this contention is not supported by the evidence, the court rejects it. At his deposition, Moore identified one occasion on which he was required to prepay while a white customer post-paid. After that experience, Moore evidently believed it would be futile to try to pump first: Moore testified that he never tried to pump before paying at that station again. He always voluntarily prepaid, although he continued to see white customers post-pay. As he put it, "[I]f you go somewhere and they keep slapping your face, you going to keep going there so they can slap you in the face?" While a trier of fact likely would be sympathetic to Moore's decision not to try to pump before paying, no reasonable trier of fact could infer, as Hill contends, that Moore was discriminated against on 149 other occasions. There is no evidence of disparate treatment because Moore was not required to prepay on those other occasions. He did so voluntarily.

Hill's contention that Moore's wife, Valencia Jones-Moore, was discriminated against 225 times is equally unsupported. Hill's estimate of 225 stems from the fact that Jones-Moore purchased gasoline at the Amoco station on west 95th Street in Evergreen Park approximately every other day for a period of fifteen months. At her deposition, when asked how many times she believed she was required to prepay when others customers were not, her estimate was "more than ten," not a couple of hundred. Moreover, Jones-Moore was able to testify regarding only a few specific incidents of alleged disparate treatment (at three stations), not 225 incidents.

7

prepay while allowing similarly-situated white customers to fill their tanks before paying.[8] Two of the videotaped incidents occurred at the Amoco station at Devon and Ridge in Chicago, on November 5, 1997 and May 21, 2000. The third videotaped incident took place on September 20, 1997 at the Lombard Amoco.[9]

B. Application of the Legal Standard for Establishing a Pattern and Practice of Discrimination to the Evidence Presented

For there to be a question of material fact on the issue of pattern and practice, Hill, on behalf of the class, must show "more than the fact that the defendant[] discriminated against several people." *United States v. Balistrieri*, 981 F.2d 916, 929 (7th Cir. 1993). "Proving isolated or sporadic discriminatory acts by the employer is insufficient to establish a prima facie case of pattern or practice of discrimination; rather it must be established by a preponderance of

---

[8]Amoco challenges the admissibility of those videotapes. Further, while Hill contends that the videotapes are clear evidence of disparate treatment, Amoco argues that the video footage is far from clear. The court's ruling on the motions for summary judgment on the injunctive relief claims does not turn on the admissibility or content of the videotapes. Accordingly, for present purposes only, the court assumes (without deciding) that the videotapes are admissible.

[9]Hill also offers deposition testimony from Asif Hussain. According to Hussain, an unnamed CSR at the Devon & Ridge Amoco told Hussain that the CSR's unnamed boss had told the CSR he could make exceptions to the prepayment policy for white customers at pumps close to him. The court may consider only admissible evidence in ruling on the parties' summary judgment motions. *See, e.g., Minor v. Ivy Tech State College*, 174 F.3d 855, 856-57 (7th Cir. 1999). Hussain's testimony appears to offer hearsay within hearsay. Hill does not identify any exception to the hearsay rule that could make the statements admissible. Nor does Hill argue that either of the statements constitute party admissions (and thus are not hearsay) under Fed. R. Evid. 801. Indeed, Amoco preemptively argued the statements are not party admissions, and Hill chose not to respond. Moreover, it is not evident to the court that either statements could constitute a party admission. For example, given the lack of evidence regarding the specific position of the CSR's "boss," the court cannot conclude that his alleged statement meet the requirements to constitute a party admission. *See* Fed. R. Evid. 801(c)(2)(C-D). Accordingly, Hussain's testimony cannot be considered in this summary judgment proceeding. *See Minor*, 174 F.3d at 856-57.

the evidence that 'racial discrimination was the company's standard operating procedure—the regular rather than the unusual practice.'" *Cooper v. Fed. Reserve Bank of Richmond*, 467 U.S. 867, 876 (1984). Thus plaintiffs may fail to establish a pattern or practice of discrimination even though individual incidents of discrimination can be proven. *Id.* at 878. "To show that discrimination against a group is the [company's] 'standard operating procedure,' there must be significant evidence or substantial proof of a practice." *Holley v. Pansophic Sys. Inc.*, No. 90 C 7505, 1993 WL 394764, at *4 (N.D. Ill. Oct. 1, 1993).

Significant individual testimony supporting statistical evidence of disparate treatment will support a finding of pattern and practice. *King v. Gen. Elec. Co.*, 960 F.2d 617, 624 (7th Cir. 1992). In their briefs, both parties attempt to support their respective positions with statistics. Neither of their arguments is persuasive, however. Amoco, for instance, argues that Hill has failed to establish a pattern or practice of discrimination because he offers evidence of only thirty allegedly discriminatory transactions at the Amoco owned-and-operated stores in the Chicagoland counties between 1995 and 2001, while African-American customers made millions of fuel purchases at those stores during that time frame.[10] Amoco concludes that thirty transactions out of millions is insufficient to establish a pattern or practice. If Amoco were correct, however, then to prove a pattern and practice in this case, hundreds of thousands of African-American gas purchasers would have to offer evidence of disparate treatment. That is not the only way to prove discrimination here. If, for example, Hill could prove that thirty out of

---

[10] Amoco reached this number based on the following undisputed facts: (1) between 1995 and 2001, there were over 70 million fuel purchases at the Amoco owned-and-operated stores in the Chicagoland counties; and (2) according to U.S. census data, the population of those counties is approximately 20% African-American.

9

thirty randomly selected African-American customers purchased gasoline (at Amoco stations at issue in this case) and were required to prepay while white customers were allowed to postpay, Hill would have compelling evidence of a pattern and practice of discrimination.[11]

Hill's proffered statistical evidence is equally unsound. Hill counters Amoco's statistics, arguing (based on a mind-boggling manipulation of the numbers, an inadmissible article regarding segregation patterns, and speculation regarding how that article applies to gas purchasing in the Chicagoland counties): (1) that it is likely, at best, that 20% of African-Americans in the Chicagoland counties purchase gas at gas stations that white customers also patronize, and therefore (2) that African-American customers were probably responsible for 400,000 transactions rather than millions. The factual basis for these assertions is questionable. Moreover, as noted above, whether African-American customers were involved in 400,000 or 4 million transactions is not dispositive of the pattern and practice issue without further information. As Hill eventually acknowledges, the relevant inquiries are "(1) how many African-Americans have purchased gas at defendant's stations in the last five years at the same time as similarly situated white customers, and (2) in how many of those transactions were African-Americans treated differently because of their race in the application of defendant's prepayment policies." (Pl.'s Reply Supp. Cross-Mot. Summ. J. Inj. Relief at 12.) But the statistics offered fail to address those issues adequately. The court therefore gives no weight to the statistics offered by either party, and turns instead to the anecdotal evidence.

Hill's pattern-and-practice claim depends solely on anecdotal evidence regarding twenty-

---

[11]Whether such evidence would be sufficient to establish a pattern and practice across the entire Chicagoland area is another question.

five to thirty individual incidents of discrimination.[12] Hill argues that given the number of incidents documented by class members, a reasonable trier of fact could find the existence of a pattern or practice of discrimination at the Amoco owned-and-operated stations in the Chicagoland counties.[13] Hill is incorrect for several reasons. First, there is not as much evidence as Hill suggests. Although class members like Alonzo Thomas, Charles Williams and Silvia Clay offer cogent evidence to support Hill's claim, other class members' anecdotal evidence is simply too inconclusive for the court even to consider. Rochelle Davenport, for example, testified that she was required to prepay at the Amoco at 71st and Ashland. But she also testified there was a sign stating that customers had to prepay, and Davenport did not see any white customers postpay. The mere fact that an African-American customer was required to prepay for gasoline is not evidence of racial discrimination: there must be a showing of disparate treatment. Davenport's testimony provides no basis for any inference that she received disparate treatment on account of her race. Likewise, Jacqueline Moore testified regarding one incident at the Amoco at 71st and Ashland during which her mother was required to prepay. Jacqueline Moore saw a white customer (or customers) pull up and begin to pump without going into the station; significantly, however, she did not see whether that white customer prepaid by credit card at the

---

[12] Amoco asserts there were at most twenty-five incidents. Hill disputes that fact, identifying five additional class members who were victims of discrimination. The court finds it likely that twenty-five is the accurate number: four of the five additional class members named by Hill evidently did not identify incidents that could be linked to an Amoco owned-and-operated station in the Chicagoland counties, and the fifth class member probably was accounted for in the twenty-five incidents. For purposes of deciding Amoco's motion for summary judgment, however, the difference between 25 and 30 is negligible, and therefore the court need not decide which parties' count is correct.

[13] Indeed, Hill contends that the anecdotal evidence entitles plaintiffs to judgment as a matter of law.

11

pump or postpaid inside. Her testimony thus fails to establish that the white customer was not required to prepay. Similarly, the testimony of Jacqueline's mother, Fannie Moore, is too vague to establish a reasonable inference that she was required to prepay when white customers were not. Fannie Moore testified regarding at least two incidents (one at the Amoco at 115th and Halsted, the other at the 71st and Ashland Amoco[14]) where she was required to prepay for her gasoline.[15] But she did not see how or when the other customers paid. Nor is there any evidence that the policy at those stations (or the particular pumps) allowed postpayment. Regarding the incident at 71st and Ashland, Fannie Moore was not even sure whether there were any white customers at the station when she was there. A person's subjective belief that she has been discriminated against, without more, is not sufficient to prove disparate treatment. *See Mills*, 83 F.3d at 841; *McMillian v. Svetanoff*, 878 F.2d 186, 190 (7th Cir. 1989).

Second, the testimony of several class members who were regular Amoco customers fails to support Hill's pattern-and-practice argument, even though those class members may have viable individual claims for discrimination based on particular incidents. For example, Hill himself was a regular Amoco customer for years, yet he alleges discrimination on only one occasion. Vincent Barner and Angela Harris gave similar testimony. In fact, the parties agree that Barner routinely purchased gasoline at Amoco without being subjected to discrimination. Such evidence hardly establishes, as it must, the existence of a pervasive pattern or practice of

---

[14]From her testimony, it appears that she left the 71st and Ashland station without purchasing gasoline.

[15]This number does not include the incident at the 71st and Ashland station that her daughter Jacqueline testified about—Fannie Moore could not recall any specific details of that occasion.

12

discriminatory enforcement of prepayment policies.

Third, even assuming that at trial Hill could prove all twenty-five or thirty individual incidents of discrimination (which is highly unlikely, given the weakness of some of the testimony), a reasonable trier of fact could not make the necessary, additional inference that "throughout all or a significant part of its system" of corporate owned-and-operated gas stations in the Chicagoland counties, Amoco regularly applies its prepayment requirements in a discriminatory manner against its African-American customers. *See Int'l Bhd. of Teamsters*, 431 U.S. 324, 336 n.16 (1977); *Cooper*, 467 U.S. at 877. Hill offers evidence of alleged discrimination at 10 Amoco owned-and-operated stations, yet there were 33 corporate stores in the Chicagoland counties at the end of 1995 and by the end of 2001, that number had risen to 71. Hill's evidence, at best, shows that discrimination occurred at only 30.3 % of the stores (10 divided by 33 equals 30.3%). And even that estimate is too high because there is no evidence that there were incidents of discrimination at all ten stations by year-end 1995. Looking at the cumulative numbers, Hill offers evidence that discrimination might have occurred on occasion[16] at 14.08% of the Amoco owned-and-operated stores in the Chicagoland counties (10 divided by 71 equals 14.08%) over a period of seven years. That is simply not a sufficient basis for a reasonable trier of fact to conclude that discrimination was Amoco's standard operating procedure throughout its corporate owned-and-operated gas stations in the Chicagoland counties.

To support the pattern-and-practice argument, Hill relies on cases such as *Balistrieri* and *United States v. DiMucci*, 879 F.2d 1488 (7th Cir. 1989), fair housing cases in which the Seventh

---

[16]For a couple of stations, such as the Amoco station at 71st and Ashland, there are allegations regarding multiple incidents of discrimination. For other stations, however, there is only a single allegation of discrimination.

Circuit affirmed a finding of a pattern and practice of discrimination where there was evidence of six separate incidents of disparate treatment. *Balistrieri*, 981 F.2d at 929-30; *DiMucci*, 879 F.2d at 1492-93. Hill's reliance is to no avail, however. "[A] finding of pattern is a factual finding," *Balistrieri*, 981 F.2d at 930, and both *DiMucci* and *Balistrieri* are significantly distinguishable on the facts. In *DiMucci*, unlike the case at bar, there was evidence of an express discriminatory policy: defendants' former rental agent testified that defendants directly instructed her to treat prospective minority tenants less favorably that prospective white tenants. 879 F.2d at 1492. In *Balistrieri*, the discriminatory incidents occurred within a short time period—six incidents at a single apartment complex over a six-week period. 981 F.2d at 924-26. Hill's evidence of twenty-five or thirty incidents over a seven year period at ten stations is much less compelling. There is simply not enough evidence for a reasonable trier of fact to find there was a pattern and practice of discrimination at the Chicagoland corporate Amoco stations.

Finding no genuine issue of material fact on the pattern and practice issue, the court therefore grants summary judgment in favor of Amoco and against the class on the injunctive relief claims. In light of this ruling, Hill's cross- motion for summary judgment on those claims is denied and Amoco's motion to decertify the class is denied as moot.

### IV.   Motions for Summary Judgment on Hill's Individual Claim for Damages

Hill individually seeks damages for a single incident of alleged discrimination that occurred on September 30, 1997 at the Lombard Amoco. Specifically, Hill claims that on September 20th, he was required to prepay for gasoline at the Lombard Amoco station shortly after a white customer who used the same pump was allowed to pump gasoline before paying. As with the injunctive relief claims, both sides believe they are entitled to judgment as a matter

14

of law. The court, however, finds that a genuine issue of material fact exists which precludes summary judgment. Accordingly, as explained below, both Amoco's motion for summary judgment on Hill's individual claim for damages and Hill's cross-motion are denied.

The policy in effect at the Lombard Amoco on September 20, 1997 was that all customers were allowed to postpay, yet Hill claims that he was required to prepay. As noted earlier, however, if a customer does not pay by credit card at the pump, the pump must be activated by the CSR, and there must be some "indication from the customer at the pump before a CSR will activate the pump." (Def.'s L.R. 56.1(a)(3) Statement Undisputed Facts Mot. Supp. Summ. J. Indiv. Damages Claim at ¶¶ 33-34.) The CSR may not know to activate the pump unless and until the customer pushes the appropriate button on the pump. Based on the court's previous order, *Hill v. Amoco*, No. 97 C 7501, 2001 WL 293628, * 7 (N.D. Ill. Mar. 19, 2001), the parties agree that for Hill's individual claim to succeed, he must show, at a minimum, that (1) the Amoco employee observed Hill's race before declining to activate the pump; (2) the Amoco employee observed the race of a similarly-situated white customer before activating the pump; and (3) the Amoco employee treated Hill differently than the similarly-situated white customer (*e.g.*, required Hill to prepay while allowing the white customer to postpay).

Based on Hill's deposition testimony, the parties agree that Hill does not know whether the CSR looked at him on September 20th when Hill arrived at the pump and attempted to pump gasoline before paying.[17] In fact, Hill testified that when he tried to make eye contact with the

---

[17] From the transcript of Hill's deposition, it does not appear that Amoco thoroughly questioned Hill regarding many of the details of the September 20th incident, such as what happened when Hill went into the gas station, when the pump was activated, etc. Such facts seem relevant for both sides' positions, yet the record is silent regarding many details of this incident (aside from whatever the video segment proves).

CSR, the CSR was not looking in his direction. (A. Hill Dep. Tr. at 82-83, 102-103.) And Hill did not know whether the CSR looked at him after Hill turned back toward the pump. (*Id.*) Nor did Hill witness the transaction involving the white customer. As a result, Amoco moves for summary judgment arguing that because Hill does not know whether the Amoco CSR looked at him (or the white customer), he cannot prove disparate treatment based on race.

But Hill's deposition testimony is not the only evidence relating to the September 20th incident. There are also two affidavits from the person who filmed the video segment of that incident, Christopher Lawson. Amoco challenges the admissibility of the video segment relating to the September 20th incident, but as explained below, the court finds it unnecessary to resolve the admissibility of the video segment at this time.[18] The affidavits indisputably may be considered on summary judgment.

In one of Lawson's affidavits, he states that as he videotaped the September 20th incident at the Lombard Amoco, he saw the cashier (1) look at the white customer "prior to releasing the pump for him" and (2) look at Hill "at regular intervals as he got out of his car, put the pump nozzle in his gas tank, pushed a button on the pump, waited for the pump to be released, and walked into the station building." (Pl.'s Resp. to Def.'s L.R. 56.1(a)(3) Statement Undisputed Facts Supp. Mot. Summ. J. Indiv. Damage Claim at Ex. C.) In response, Amoco contends that

---

[18]The court rejects Amoco's argument that the video segment is hearsay: the video segment is no more hearsay than a photograph is hearsay. Regarding Amoco's authenticity objection, the court notes that during the course of briefing the motions for summary judgment (and in response to the objection), Hill (finally) submitted an affidavit from Lawson in which Lawson attested to the videotaping and editing process and swore that the segment of the videotape relating to the incident at the Lombard Amoco on September 20th truly and accurately depicted the events of that evening. (Pl.'s (1) Resp. to Def.'s L.R. 56.1(a)(3) Statement Supp. Mot. Summ. J. Inj. Relief Claims and (2) Am. Statement of Material Facts at Ex. D.) That affidavit may or may not resolve Amoco's authenticity objections.

16

Lawson's affidavit cannot raise a material issue of disputed fact because it is based on speculation and assumption as to what the cashier observed, especially given Lawson's distance from the cashier. But Amoco's objections go to the credibility and weight of Lawson's testimony, which are issues for the jury to resolve. *See In re Leonard Chavin*, 150 F.3d 726, 728 (7th Cir. 1998). Amoco may very well prevail: the jury could find that Lawson's testimony is incredible, or that his testimony is credible yet insufficient to support an inference that the CSR did not activate the pump until Hill prepaid, or the additional, necessary inference the CSR's conduct was based on Hill's race. Amoco will have to save these arguments for the jury, however.

The court finds that there is a disputed issue of material fact regarding whether the CSR looked at Hill and the white customer on the night in question prior to activating (or refusing to activate) the pump, and thus denies both Amoco's motion for summary judgment and Hill's cross-motion for summary judgment on Hill's claim for individual damages.

ENTER:

_____
JOAN B. GOTTSCHALL
United States District Judge

DATED: January 27, 2003

17